UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-00116-SEB-TAB |
| | ) | |
| MIKHAL HAMILTON, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

On March 24, 2026, after a two-day trial, a jury found Defendant Mikhal Hamilton ("Mr. Hamilton") guilty on Count One, Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); Count Two, Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. 924(c)(1)(A)(ii); and Count Three, Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Now before the Court is Mr. Hamilton's (renewed) Motion for Judgment of Acquittal, pursuant to Federal Rule of Criminal Procedure 29. Dkt. 129. For the reasons stated below, that Motion is **denied**.

**BACKGROUND**

Mr. Hamilton's jury trial commenced on March 23, 2026. The following day, on March 24, 2026, the jury returned a guilty verdict on all counts.[1]

The Government's case-in-chief, as presented at trial and summarized in its response brief in opposition to the instant motion, established as follows:

---

[1] Mr. Hamilton stipulated to the interstate commerce and prior felon status elements of Counts One and Three.

1

In the early morning hours of June 25, 2023, while it was still dark outdoors, two young men wearing face covers and dark attire entered a 24-hour CVS Pharmacy located in Carmel, Indiana: As demonstrated by CVS surveillance footage introduced at trial, Robber 1 wore a ski mask and a black short sleeve shirt over a grey long sleeve undershirt; and Robber 2, later identified as co-Defendant David Washington ("Mr. Washington"), wore a hooded sweatshirt bearing a green logo. Robber 1 quickly breached the threshold of the pharmacy area by jumping onto and over the counter as he wielded a firearm equipped with a laser beam and demanded on-duty Pharmacist Arial Burrus ("Ms. Burrus") to disclose the location of the pharmacy's drugs. Grabbing hold of Ms. Burrus's shirt collar, Robber 1 ordered Ms. Burrus to open the safe that held a myriad of controlled substances.

Once the safe was open, Mr. Washington, the second (armed) assailant, hastily filled multiple plastic CVS bags with pill bottles. Robber 1, meanwhile, stood off to the side and out of the surveillance camera's frame, though a flashing light can be observed reflecting off of the side of the counter: This illumination is consistent with Ms. Burrus's testimony that Robber 1's firearm was equipped with a laser beam. After Mr. Washington completed his retrieval of the pill bottles, he and Robber 1 absconded, and Ms. Burrus promptly phoned 911. At trial, Ms. Burrus testified that she complied Robber 1's directives because she feared for her life.

Soon thereafter, at approximately 5:45 a.m., on-duty Carmel Police Lieutenant Andrew Zellers ("Lt. Zellers") learned over the radio dispatch of a reported robbery involving two male suspects who had fled the scene in a dark sedan. While driving westbound on 116th Street, Lt. Zellers began following a dark Chevrolet Impala whose appearance aligned with the general description of the suspects' vehicle. As he was traveling behind the Impala, Lt. Zellers reportedly observed an individual tossing pill bottles out of the car window.

With the assistance of several other police officers, Lt. Zellers initiated a felony traffic stop and effectuated an arrest of the vehicle's occupants, who were identified as Mr. Washington and Mr. Hamilton. Dozens of empty pill bottles accompanied Mr. Hamilton as he exited the rear passenger seat. At the time of their arrest, Messrs. Washington's and Hamilton's attire matched the description of that worn by the two individuals who had robbed CVS. On the back seat of the Impala, Lt. Zellers reportedly saw a firearm equipped with an extended magazine sitting underneath plastic CVS bags holding hundreds of loose pills.

At trial, Carmel Police Department Crime Scene Investigator Karen Sutton ("CSI Sutton") testified about photographs she captured of the crime scene as well as of Mr. Hamilton and his outfit at the time of his arrest. Notably, CSI Sutton photographed a shoe print found on the CVS Pharmacy countertop (where Robber 1 had jumped) that matched the tread pattern of Mr. Hamilton's own shoes. CSI Sutton also collected evidence from the Impala, including two handguns, dozens of empty pill bottles, and two plastic CVS bags containing hundreds of loose pills.

The Government presented the testimony of Detective Kevin Kinghorn ("Detective Kinghorn"), who at trial discussed surveillance footage of a KFC parking lot adjacent to the CVS: That footage depicts the getaway vehicle's pre-robbery arrival; two shadowy figures' exit from and return to the vehicle; and the vehicle's departure from the parking lot. Detective Kinghorn's testimony also revealed that a search of Mr. Hamilton's cell phone, which had been recovered from the Impala, yielded evidence of a recent mobile search for nearby 24-hour CVS pharmacies. The phone also contained a photo of handgun that appeared nearly identical to the one recovered from the back seat of the Impala and of the stolen pills, next to where Mr. Hamilton had been sitting prior to his arrest. Other government witnesses included retired Carmel Police Officer Scott

Morrow, who assisted Lt. Zellers in conducting the traffic stop that resulted in Mr. Hamilton's arrest, and Carmel Police Lieutenant Jeffrey Sedberry, who responded to CVS and collected evidence at the scene.

After the Government rested at the end of its case-in-chief, Mr. Hamilton took the stand to testify in his defense and introduced an alternative version of that day's events. During his testimony, Mr. Hamilton denied having ever entered the CVS Pharmacy on the day in question. He also stated that he and the actual robber, an unidentified third co-conspirator, had quickly swapped their clothes in the KFC parking lot, where the actual robber deposited the firearm and pills into the getaway car before departing in a different vehicle.

Before the matter was submitted to the jury, Mr. Hamilton, through counsel, orally moved for a judgment of acquittal, which the Court denied.

Following deliberations, the jury returned a guilty verdict on all three counts alleged in the Superseding Indictment. On April 6, 2026, Mr. Hamilton renewed his Motion for Judgment of Acquittal, dkt. 129, which the Government timely opposed on April 14, 2026, dkt. 131. Mr. Hamilton filed no reply, and the time for doing so has passed. Thus, Mr. Hamilton's motion is ripe for ruling.

## LEGAL STANDARD

"Federal Rule of Criminal Procedure 29 permits a defendant to move for a judgment of acquittal before the case is submitted to the jury, or even after a guilty verdict is entered, if he does not believe the evidence is sufficient to sustain a conviction." *United States v. Friedman*, 971 F.3d 700, 712 (7th Cir. 2020). "The movant faces a nearly insurmountable hurdle," however. *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014). Where, as here, the defendant challenges the sufficiency of the evidence, "we view the evidence in the light most favorable to

4

the government and will overturn the jury's verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted).

## DISCUSSION

Mr. Hamilton contends that the evidence presented at trial, when viewed in the light most favorable to the Government, cannot support a finding beyond a reasonable doubt that he committed the offenses enumerated in the Superseding Indictment. Dkt. 130. Mr. Hamilton does not specify which aspects of the crimes charged that the Government failed to prove. Even so, we have little trouble concluding that the evidentiary record contains ample support for the jury's finding of Mr. Hamilton's guilt beyond any reasonable doubt.

When Mr. Hamilton was arrested shortly after the robbery, he and Mr. Washington were wearing clothes that fully matched the descriptions of the CVS assailants, as described by Ms. Burrus and as depicted in the CVS surveillance footage. Indeed, the tread of Mr. Hamilton's sneakers aligned precisely with that of the shoe print left on the pharmacy countertop. During the brief pursuit that preceded Mr. Hamilton's arrest, video recordings captured the disposal out the rear car window of numerous plastic pill containers commonly utilized by pharmacies left strewn along the highway. Furthermore, when Lt. Zellers initiated the traffic stop and approached the Impala, Mr. Hamilton was located in the back seat sitting amongst plastic pill bottles and other stolen loot and in close proximity to a loaded firearm outfitted with a laser sight attachment consistent with Ms. Burrus's description of the one brandished during the robbery. Additional circumstantial evidence is reflected in Mr. Hamilton's cell phone records, which establish that, near the time of the robbery, Mr. Hamilton had himself searched Apple Maps for open 24-hour pharmacies in the area.

The evidence summarized above and presented in greater detail at trial, coupled with the parties' stipulations as to interstate commerce and Mr. Hamilton's status as a convicted felon, support the jury's verdict beyond a reasonable doubt, establishing that Mr. Hamilton was guilty on all counts. Although Mr. Hamilton presented a competing version of the facts via his own testimony, we must "defer to the credibility determination of the jury." *Torres-Chavez*, 744 F.3d at 993. To that end, we find that the evidence introduced at trial was more than sufficient for a rational jury to discount Mr. Hamilton's testimony and to draw reasonable inferences from all the evidence that Mr. Hamilton participated in the commission of these three serious crimes. *United States v. Memar*, 906 F.3d 652, 656 (7th Cir. 2018) ("While a verdict based on speculation cannot stand, one premised on reasonable inferences is sound."). Accordingly, we hold that the evidence was entirely sufficient to establish beyond a reasonable doubt that Mr. Hamilton committed the offenses of interference with commerce by robbery; brandishing a firearm during and in relation to a crime of violence; and unlawfully possessing a firearm.

## CONCLUSION

For the reasons stated above, Mr. Hamilton's Motion for Judgment of Acquittal is hereby **DENIED**. Dkt. 129.

IT IS SO ORDERED.

Date:

_____6/5/2026_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

6

Distribution:

Dominic David Martin
INDIANA FEDERAL COMMUNITY DEFENDERS
dominic_d_martin@fd.org

Kelsey Massa
DOJ-USAO
kelsey.massa@usdoj.gov

Susan Diane Rayl
Harshman Ponist Smith & Rayl, LLC
srayl@handponist.com

Nate Walter
DOJ-USAO
nate.walter@usdoj.gov